**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MATTHEW DAVID WONNEMAN**<br><br>Plaintiff,<br><br>**v.**<br><br>**GLOBAL GRAB TECHNOLOGIES, INC.**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:26-cv-01267-BAH**<br><br>**Judge Beryl A. Howell** |

**STATEMENT OF POINTS OF LAW AND AUTHORITY IN SUPPORT OF DEFENDANT GLOBAL GRAB TECHNOLOGIES, INC.'S MOTION TO DISMISS**

Defendant Global Grab Technologies, Inc. ("GGT" or "Defendant") moves to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6), as well as 28 U.S.C. § 1406(a). Dismissal is appropriate for several reasons. First, Plaintiff Matthew David Wonneman ("Plaintiff") filed this action in an improper venue. Second, the Complaint fails to include sufficient factual allegations establishing subject matter jurisdiction for Plaintiff's claims that require administrative exhaustion. Third, the Complaint fails to state plausible claims for relief. Because there are substantive problems with Plaintiff's Complaint, dismissal, rather than transfer, is appropriate. Alternatively, pursuant to 28 U.S.C. § 1404(a), any claims not dismissed should be transferred to the Middle District of Tennessee.

## I. BACKGROUND

### A. Procedural Background

Plaintiff is a former employee of Defendant. *See* ECF No. 1 at ¶¶ 6-7. Plaintiff filed this action in this Court on April 14, 2026 and names GGT as the sole Defendant. *See* ECF No. 1. Plaintiff asserts retaliation claims under the National Defense Authorization Act



FP 64252736.5

("NDAA"), 41 U.S.C.A. § 4712, and the False Claims Act ("FCA"), 28 U.S.C. § 1730(h), as well as a "constructive discharge" claim apparently not attached to any federal statute. *See id.* Specifically, Plaintiff's Complaint asserts that he was retaliated against after he complained about his supervisor's absences and timekeeping practices and later was "forced" to resign because of the alleged retaliation. *See id.*

The Complaint's sole assertion for jurisdiction in this Court is 41 U.S.C.A. § 4712, the NDAA. ECF No. 1 at ¶ 1. Despite including a retaliation claim under the FCA, and a separate "constructive discharge claim," the Complaint is devoid of any other allegations related to jurisdiction. *See id.* Plaintiff's Complaint includes a single conclusory statement about venue: "[v]enue is proper in this Court because the events complained of herein occurred in the District of Columbia." *Id.* at ¶ 3. No statute or rule is cited to support Plaintiff's venue allegations. The Complaint does not allege Defendant is a resident of this district.[1] The Complaint also does not allege Plaintiff is a resident of this district.[2]

Regarding exhaustion of administrative remedies – a pre-suit requirement for Plaintiff's NDAA retaliation claim – Plaintiff again includes in his Complaint insufficient factual allegations. Specifically, the Complaint alleges that "[p]ursuant to 41 USCS § 4712, on or about April 15, 2025 individually, and on June 4, 2025, through Plaintiff's Counsel, Plaintiff submitted Whistleblower Retaliation Complaints with the Office of the Inspector General ("OIG")" and "[i]n accordance with 41 USCS §1471, Plaintiff has properly

[1] As discussed in more detail below, the civil cover sheet and related service documents indicate Defendant is a "Citizen of Another State," and that Defendant is "Incorporated and [Defendant's] Principal Place of Business [is] In Another State." ECF No. 1-1, p. 1; ECF No. 3, p. 1. These documents list Defendant's address as 277 Mallory Station Road, Suite 112, Franklin, Tennessee 37067. *See id.*

[2] The civil cover sheet identifies Plaintiff's address as 5121 Solomons Island Road, Huntingtown, Maryland 20639. *See* ECF No. 1-1 at p. 1.

exhausted his administrative remedies before timely filing suit." *Id.* at ¶¶ 4-5. However, the Complaint does not include facts establishing which OIG allegedly received Plaintiff's Complaints, what action, if any, was taken in response to Plaintiff's Complaints, how the administrative remedies were "properly exhausted," or the details of what information was included in his Complaints. Additionally, the Complaint fails to attach any documentary support for Plaintiff's assertion that he "properly exhausted his administrative remedies."[3] As a result, the Complaint lacks sufficient factual detail establishing that Plaintiff complied with his pre-suit administration exhaustion requirements, or which claims were involved in any administrative process that took place.

The Complaint does not allege Defendant is a resident of this district.

### B. Complaint Allegations

Plaintiff alleges that he was hired by Defendant in July 2017 as a Lead Technician. *Id.* at ¶ 6. The Complaint states Defendant is a federal contractor and had a federal contract requiring onsite repairs and maintenance on vehicular barriers around the United States Capitol Police ("USCP") campus. *Id.* at ¶¶ 8–9. The Complaint includes the conclusory allegation that "Plaintiff has properly exhausted his administrative remedies before timely filing suit," but fails to identify to which "Office of the Inspector General" ("OIG") his complaints were allegedly submitted, the specific complaint(s) he lodged, what, if anything, was done in response to his complaints, or how/when he exhausted administrative remedies, before filing this lawsuit. *Id.* at ¶¶ 4-5.

[3] Importantly, the USCP OIG advised that "a comprehensive search of our databases indicates that the Office of Inspector General has no record of any whistleblower retaliation complaints, statements, or related documentation ever being submitted to this office by Mr. Wonneman or his counsel." **Exhibit A**.

All of Plaintiff's claims stem from his allegation of reporting alleged misconduct to his employer and retaliation resulting from those reports. Specifically, the Complaint states that on September 11, 2023, "Plaintiff emailed [his supervisor, Chris] Cutlip about issues at work and Cutlip's absences." *Id.* ¶ 17. Other than "Cutlip's absences," Plaintiff fails to provide factual details about the "issues at work" that were the subject of his September 11, 2023 email. *See id.*

Plaintiff also alleges that "[o]n April 24, 2024, he emailed "Defendant's Human Resources ("HR")" about Cutlip's absences and Cutlip's "false reports as to his work hours." *Id.* at ¶ 18. According to the Complaint, on "April 29, 2024, Plaintiff attended a meeting with "Jamie Webb from Defendant's payroll department" and "Tanya Grey, Defendant's Acting HR." *Id.* at ¶ 18. Plaintiff claims that during this meeting he "reiterated Cutlip's illegal and fraudulent activities." *Id.* at ¶18.[4] Yet again, Plaintiff fails to set forth any factual detail about the "illegal and fraudulent activities" he purportedly "reiterated" during the April 29, 2024 meeting.

The Complaint further alleges "[o]n information and belief Tanya Grey had a meeting with [Chris] Cutlip" on May 9, 2024, and, thereafter, "Cutlip **attempted** to make changes to Plaintiff's schedule and to remove Plaintiff's bi-weekly overtime." *Id.* at ¶ 19 (emphasis added). According to Plaintiff, on May 15, 2024, Mr. Cutlip met with Plaintiff and other team members to announce scheduling changes "required by the Contract." *Id.*

[4] Notably, Cutlip was a salaried employee who was not required to keep track of or report his hours worked. *See* **Exhibit B** at ¶ 19. Additionally, the contract GGT had with the USCP was a fixed fee contract that provided for a set monthly payment to GGT, not payment based upon the hours worked by Cutlip or any other GGT employee. *See id.* at ¶20. Therefore, even if Plaintiff reported to GGT that Cutlip was not accurately reporting his hours worked, such a report would not have involved employee misconduct, much less "illegal and fraudulent" activities, as Plaintiff alleges.

at ¶ 20. Plaintiff states he perceived Mr. Cutlip's actions as "a direct threat to Plaintiff's continued employment," apparently because "Defendant's HR" later informed Plaintiff that "HR was unaware of the changes to Plaintiff's shift." *Id.*

Plaintiff alleges he sent his second email to Defendant's "HR" on July 19, 2024. *Id.* at ¶ 21. In his second email, Plaintiff "informed HR that Cutlip's retaliation against Plaintiff" . . . had become increasingly severe." *Id.* Ms. Gray again met with Plaintiff to address his July 19, 2024 email. *Id.* During his second meeting with Ms. Gray, Plaintiff claims Ms. Gray "informed Plaintiff that he was the only one who had such complaints against Cutlip." *Id.*

Plaintiff further alleges that on August 13, 2024, he met with "Chris Johnson ("Johnson") from HR wherein Plaintiff informed Johnson that he had been retaliated against by Cutlip for speaking with HR about Cutlip's fraudulent actions . . ." *Id.* at ¶ 22. According to Plaintiff, Mr. Cutlip's "fraudulent actions" amounted to "not showing up for work, and falsifying his time cards [sic]." *Id.* Again, it is unclear from the Complaint why Plaintiff believed his complaints about Mr. Cutlip related to fraud of any kind. According to Plaintiff, Mr. Johnson "proposed to Plaintiff to transfer to a different team, changing Plaintiff's shift and work location." *Id.* The Complaint states Plaintiff "believed" the offer to transfer was "unfair to him," so he "rejected it." *Id.* It is unclear from Plaintiff's Complaint why he believes the offered transfer was "unfair." The Complaint fails to include facts about the specific job offered, how his shift and work location would change, or any other factual detail about the offer. Additionally, the Complaint does not include factual allegations of unlawful employment actions, fraudulent or illegal activity by Mr. Cutlip (or anyone else), or retaliatory conduct occurring after his August 23, 2024 meeting

with Mr. Johnson.[5]

Plaintiff alleges that he lodged an additional complaint about Mr. Cutlip on March 21, 2025. *Id.* at ¶ 23. This time, Plaintiff complained to "Timothy Fonseca ("Fonseca") acting supervisor" for GGT's contract with USCP. *Id.* According to the Complaint, Plaintiff told Fonseca about "Cutlip's false time reports and unfounded billable hours." *Id.* There are no factual allegations about *anything* occurring between Plaintiff's March 21, 2025 complaint to Mr. Fonseca and his resignation on May 13, 2025. *See id.* at ¶¶ 23-24. Even so, Plaintiff claims he was "forced" to resign on May 13, 2025 due to "pervasive on-going retaliation." *Id.* at ¶ 24.

## II. LEGAL STANDARD

### A. Dismissal for Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a case for "improper venue." Fed. R. Civ. P. 12(b)(3). Additionally, the general federal venue statute, 28 U.S.C. § 1406(a), requires dismissal, "or if it be in the interest of justice, transfer" a case filed "in the wrong division or district." 28 U.S.C. § 1406(a). Combined, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper' . . . in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 577 (2013). As the Supreme Court explained, "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.*

[5] As mentioned below, the Complaint does include Plaintiff's conclusory allegation that "due to the pervasive on-going retaliation by Cutlip against Plaintiff, Plaintiff was forced to resign" on May 13, 2025. ECF No. 1 at ¶ 24. However, Plaintiff fails to include sufficient factual detail to support his claim of "pervasive on-going retaliation" by Cutlip or anyone else, at any time. This is in addition to his failure to state factual allegations of anything occurring during the period of August 23, 2024 through March 21, 2025.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)," *id.*, which governs "the venue of all civil actions brought in district court of the United States." 28 U.S.C. § 1391(a)(1). Venue of a civil case is proper in the following three (3) judicial districts: 1) where "any defendant resides, if all defendants are residents of the State in which the district is located;" 2) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or 3) where "any defendant is subject to the court's personal jurisdiction with respect to such action," but *only if* venue is unavailable in any other district. *Id.* § 1391(b).

When objecting to venue, the moving party must provide "sufficient specificity to put the plaintiff on notice of the defect" related to venue. *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F.Supp.3d 207, 211 (D.D.C. Feb. 19, 2014). "Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is 'the plaintiff's obligation to institute the action in a permissible forum . . .'" *Williams v. GEICO Corp.*, 792 F.Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); *see also* WRIGHT ET AL., § 3862, at 502, 505-506 ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue[,] . . . consistent with the plaintiff's threshold obligation to show that the case belongs to the particular district court in which the suite has been instituted.").

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in plaintiff's favor, and resolves any factual conflicts in plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F.Supp.2d 274, 276 (D.D.C. 2002). However, when deciding the motion, the court is not limited to the complaint allegations alone and may

examine other facts presented by the parties. *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17-18 (D.D.C. 2013). In doing so, the plaintiff's factual allegations are accepted as true "only to the extent that such facts are uncontroverted by defendant's affidavit." *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190 (1998). Additionally, a plaintiff's legal conclusions need not be accepted as true. *Williams,* 792 F.Supp. 2d at 62; *Darby*, 231 F. Supp. 2d at 277; *see also* 622215 *Fifth St. Assocs. v. U-Haul Intl, Inc.*, 148 F. Supp.2d 50, 54 (D.D.C. 2001).

**B. Dismissal for Failure to State a Claim**

Plaintiffs must include "a short plain statement of the claim[s] showing that the pleader is entitled to relief,' in order to 'give the defendant faire notice of what the . . . claim[s] [are] and the grounds upon which [the claims] rest[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion is not a test of the plaintiff's likelihood of success on the merits, but, instead, tests whether the plaintiff properly stated a plausible claim for relief. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *see also Twombly*, 550 U.S. at 570. To withstand a Rule 12(b)(6) motion to dismiss, the complaint must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). As the Supreme Court made clear, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" has the plaintiff stated a facially plausible claim for relief. *Id.* (quoting *Twombly*, 550 U.S. at 556). And the complaint

allegations must permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, the plaintiff's own conclusory statement, speculation or personal beliefs may properly be disregarded by the Court. *See Ashcroft v. Iqbal, 556 U.S. 662, 678 129 S.Ct. 1937 (2009) (*citing *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) (court does not accept inferences unsupported by facts or legal conclusions cast as factual allegations).

## III. LEGAL ANALYSIS

The District of Columbia is not the proper venue for Plaintiff's claims, warranting dismissal pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a). Defendant is not a resident of the District of Columbia, a substantial part of the events or omissions material to Plaintiff's claim occurred in Tennessee, and the Middle District of Tennessee is an appropriate venue. The lack of proper venue for this civil action is clear and the case should be dismissed.

Dismissal, rather than transfer, is appropriate because there are other serious problems with Plaintiff's claims. The Complaint falls short of stating plausible claims for relief, and lacks the necessary factual allegations needed to withstand Rule 12(b)(6) scrutiny. This Court should exercise its broad discretionary power and dismiss the case, rather than delay the inevitable by transferring it to Tennessee. *See Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) (noting that "it made little sense to transfer the case to another jurisdiction pursuant to 28 U.S.C. § 1406" since "[t]hat would have kept the case alive only until the next court looked it over and found it wanting.").

If for some reason the Court determines dismissal is not appropriate at this time,

Defendant respectfully requests an order transferring the case to Tennessee, where it could have been, and should have been, brought in the first place.

### A. Venue is Improper in the District of Columbia

The District of Columbia is not the proper venue for Plaintiff's claims because neither party is a resident of this district, most of acts and omissions relevant to the claims occurred in Tennessee, and the Middle District of Tennessee is an available venue. Accordingly, this district is not the proper venue. *See* 28 U.S.C. § 1391(b).

#### *1. GGT is a Resident of the Middle District of Tennessee – Making Venue Improper Pursuant to § 1391(b)(1)*

The first § 1391(b) venue category can be met when the case is filed in the district where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). GGT is a resident of Franklin, Tennessee and Plaintiff's own filings establish this reality. For starters, the caption of the case lists GGT's address as 277 Mallory Station Road, Suite 112, Franklin, Tennessee 37067. *See* ECF No. 1. The civil cover sheet also lists Defendant's Franklin, Tennessee address, and states that GGT's "County of Residence" is Williamson County, Tennessee. *See* ECF No. 1-1, p. 1. The civil cover sheet also makes clear that GGT is a "Citizen of Another State," is incorporated in another state, and has its principal place of business in another state. *Id*. The summons and service papers, as well as the return of service document, further establishes GGT's residency in Tennessee. *See* ECF No. 1-1, p. 1.; ECF No. 1-2, p. 1; *see also* ECF Nos. 2-5.[6]

There is no doubt GGT is a resident of Franklin, Williamson County, Tennessee,

[6] To the extent Plaintiff failed to effectuate proper service on GGT, Defendant expressly reserves its right to seek dismissal for lack of personal jurisdiction pursuant to Rules 4(e), 4(h)(1), and 4(l)(1) of the Federal Rules of Civil Procedure.

within the Middle District of Tennessee.[7] As a result, Plaintiff has not met his threshold obligation of showing the case was filed in the proper venue because this district is not one "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1); *see also Williams*, 792 F.Supp.2d at 62 (D.D.C. 2011) (the burden remains on plaintiff to establish the action was filed in the proper venue since plaintiff is obligated "to institute the action in a permissible forum") (citing *Freeman*, 254 F.Supp.2d at 56 (D.D.C. 2003).

As this Court has noted, when the complaint makes clear that defendant resides in another district, that renders venue in this district improper under both §1391(b)(1) and § 1391(b)(3) and eliminates the need for the Court to analyze personal jurisdiction. *See Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F.Supp.3d 207, 211 (D.D.C. Feb. 19, 2014) (Complaint allegations indicating defendants are residents of another district, renders venue improper in the District of Columbia under § 1391(b)(1) and (b)(3)); *see also* 28 U.S.C. § 1391(b)(3) (providing for jurisdiction over a civil action in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect" to the action *only* if "there is no district in which an action may otherwise be brought.") (emphasis in original).

The first and third factors to consider when looking at improper venue weigh heavily in favor of dismissal.

---

[7] Franklin, Tennessee is located with the Middle District of Tennessee, a fact this Court may take judicial notice of. *See* the United States District Court for the Middle District of Tennessee's web page showing the various divisions within its district: https://www.tnmd.uscourts.gov/divisions-court; *see also Cannon v. Dist. Of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (noting that courts may take judicial notice of information from official public websites of government agencies); *Abraham v. Burwell*, 110 F.Supp.3d 25, 27 (D.D.C. 2015) (taking judicial notice of agency location in venue challenge).

### 2. *The Operative Facts Material to Plaintiff's Claims Occurred in Tennessee*

All that is left is the § 1391(b)(2) venue category, which states that "[a] civil action may be brought in – 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* Plaintiff appears to rely on this prong because his Complaint alleges "[v]enue is proper in this Court because the events complained of herein occurred in the District of Columbia." ECF No. 1 at ¶ 3. However, Plaintiff cannot meet his burden of showing proper venue because a substantial part of the relevant events occurred in Tennessee. *See Delta*, 20 F.Supp.3d at 212 (quoting 28 U.S.C. § 1391(b)(2)) (emphasis in original).

As an initial matter, it should be noted that "the convenience of the defendant (but not of the plaintiff)" is appropriate to take into account when considering a plaintiff's choice of venue. *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 760 F.2d 312, 316-317 (D.C.Cir.1985). Much like in the *Noxell* case, here, Plaintiff "has chosen the District of Columbia simply to suit [his] own convenience." *Id.* at 317; *see also Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F.Supp.2d 137, 142 (D.D.C. 2007) ("Because venue is intended to protect defendants, 'courts often focus on the relevant activities of the defendant … in determining where a substantial part of the underlying events occurred.'" (quoting *Abramoff v. Shake Consulting, L.L.C.*, 288 F.Supp.2d 1, 4 (D.D.C.2003)).

The so-called "substantial part" analysis focuses on the location of the events giving rise to the claims, *not* the defendant's contacts with the district. *Steen v. Murray*, 919 F.Supp.2d 993 (2013). "Substantial part" does not mean venue is proper only where most

of the events occurred. *Strobel v. Rusch*, 364 F.Supp.3d 1270 (2019). Instead, the focus remains on those significant events or omissions that are *material to the plaintiff's specific claims*.

Here, Plaintiff alleges he was retaliated against after complaining about what he viewed as excessive absenteeism by Cutlip, and timekeeping practices Plaintiff considered inappropriate. Because "nearly all of the actions or events giving rise to [the suit] occurred at [GGT's] corporate location[] in" Tennessee, venue under § 1391(b)(2) properly is in the Middle District of Tennessee. *See Trenwyth Indus., Inc. v. Burns and Russell Co.*, 701 F.Supp. 852, 853; 856 (D.D.C.1988) (holding that "one, although possibly two, direct sales to District of Columbia residents" was insufficient to trigger venue under previous version of 28 U.S.C. 1391(b) because "nearly all of the actions or events giving rise to [the suit] occurred at [the defendant's] various corporate locations in" another venue).

Indeed, the events or omissions material to Plaintiff's claims are those involving GGT's receipt of and response to Plaintiff's complaints about Cutlip. Courts in this district consistently treat the location where retaliatory employment decisions were made as the most significant factor in the venue analysis for employment retaliation claims. *See Hamilton v. Transportation Security Administration*, 263 F.Supp.3d 317 (2016) (court held that venue was improper in the District of Columbia for plaintiff's Title VII claim because retaliatory and hostile decisions and actions concerning plaintiff's employment status occurred in Virginia, not in the District). Venue will be deemed to lie where a substantial part of those decisions or actions related to the practice occurred. *See id.* As set forth in the Declaration of Brian Cooper, relevant decision makers are located in Tennessee. *See* **Exhibit B**, ¶¶ 14-47.

According to the Complaint allegations, Platiniff reported Cutlip's purported

"fraudulent and illegal" actions via email to GGT's "HR" on April 24, 2024, to Webb and Gray during a meeting on April 29, 2024, via second email to GGT's "HR" on July 19, 2024, and during a meeting with Johnson on August 13, 2024. *See* ECF No. 1 at ¶¶ 18-22.[8]. These individuals all resided in Tennessee and worked exclusively at and out of GGT's Franklin, Tennessee location. *See* **Exhibit B**, ¶¶ 21-37. Additionally, as set forth in Mr. Cooper's declaration, all payroll, human resources, general operations, customer service and support, contract negotiations, contract management and all other managerial functions take place exclusively at and out of GGT's Tennessee location. *See id.*

Moreover, Tennessee is where Plaintiff's emails to "HR" were received, where they were reviewed, and is where Webb and Gray were when they met with Plaintiff. Johnson also works exclusively from Tennessee. As a result, Johnson would have been physically located in Tennessee for any meeting he had with Plaintiff in August 2024. What's more, all of GGT's personnel records, including any related to Plaintiff's complaints about Cutlip, and/or those relating to GGT's contract with the USCP, were generated from and are maintained at GGT's Franklin, Tennessee office. Plaintiff has not and cannot claim that documentary evidence likely to be relevant is maintained exclusively at Defendant's Tennessee location. *See* **Exhibit B**; *see also Lee v. England,* No. 02–2521, 2004 WL

[8] Plaintiff also alleges he sent an email to Cutlip on September 11, 2023 to complain about "issues at work and Cutlip's absences." ECF No. 1 at ¶¶ 17, 36 and 60. However, Plaintiff fails to allege sufficient factual allegations to demonstrate his email to Cutlip amounted to protected activity for purposes of his claims. Plaintiff does not allege his email to Cutlip included a report of fraud, illegal conduct, or improper billing to the USCP, or the timekeeping irregularities he later reported to Webb, Gray and/or Johnson. "Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement—just as it does not constitute protected conduct in the first place." *Yesudian*, 153 F.3d at 743. Common sense mandates that an individual cannot retaliate against conduct of which he was unaware. *See Schweizer*, 677 F.3d at 1239.

764441, at *1 n. 1 (D.D.C. Mar. 9, 2004) (noting that plaintiff's unsupported assertions could not stand against a declaration that all actions related to and all records of his EEO complaint, save clerical functions such as docketing, took place in Bethesda); *James,* 227 F.Supp.2d at 23 (crediting defendant's affidavit stating where plaintiff's personnel records were located and maintained over plaintiff's bare assertions to the contrary).

Venue clearly is inappropriate in this district and Plaintiff's case should be dismissed.

### B. Dismissal Rather than Transfer is Appropriate

Plaintiff's Complaint should be dismissed, rather than transferred, due to the serious substantive problems with the claims Plaintiff attempts to assert. First, Plaintiff's Complaint fails to set forth a plausible retaliation claim under the NDAA. The Complaint is devoid of any factual allegations establishing that the contract at issue is one that falls within the statutory scheme of the NDAA, which applies to contracts with executive agencies. Plaintiff's Complaint also fails to include factual support necessary to establish the basic elements of a NDAA whistleblower retaliation claim. Second, Plaintiff's "constructive discharge" claims likewise should be dismissed for failure to state a claim because the Complaint does not set forth a stand-alone cause of action. Third, Plaintiff's FCA retaliation claim also fails to state a plausible claim for relief and should be dismissed.

#### *1. NDAA Retaliation Claim Should be Dismissed – Count I*

Count I of the Complaint attempts to set forth a NDAA "Whistleblower Retaliation" claim but fails to state a plausible claim for relief and should be dismissed.

An employee who believes that he has experienced retaliation under the NDAA "may submit a complaint to the Inspector General of *the executive agency involved*." *Id.*



FP 64252736.5

§ 4712(b)(1) (emphasis added).[9] Plaintiff alleges in his Complaint that "Defendant had a contract with the federal government which required Defendant to provide physical security onsite for repairs and maintenance on vehicular barriers around the United State Capital Police (the "USCP") campus." ECF No. 1 at ¶ 9).[10]

The prescribed administrative process for a NDAA claim is: (1) file a complaint with the relevant OIG; (2) the OIG has 180 days to investigate and submit a report, extendable by another 180 days with agreement; (3) the agency head has 30 days to determine whether prohibited reprisal occurred; (4) if no order issues within 210 days of complaint submission (or 30 days after extension expires), the complainant is "deemed to have exhausted all administrative remedies"; and (5) has two years from the deemed exhaustion date to file the *de novo* district court action. *See* 41 U.S.C.A. § 4712.[11]

The Complaint's sole jurisdictional statement is tied to the NDAA. However,

---

[9] As mentioned above, the Complaint fails to identity which OIG Plaintiff allegedly "submitted Whistleblower Retaliation Complaints" to, or any details related to actions taken in response to any such complaints. This is problematic in two respects. First, without specifying the "executive agency involved," if any, this Court cannot verify that § 4712's exhaustion requirement has been satisfied – a prerequisite to subject matter jurisdiction in any district court. *See Moore v. University of Kansas*, 188 F.Supp.3d 1242 (2015). Second, the specific content and timing of the OIG complaints (and whether 210 days have elapsed) affects when the two-year limitations period for the *de novo* action began to run. As such, the Complaint fails to establish the timely and appropriate pre-suit exhaustion requirement for Plaintiff's NDAA claim.

[10] The USCP "is a creation of the United States Congress: its officers are jointly selected by the House of Representatives and the Senate." *Bostic v. District of Columbia*, 906 A.2d 327, (D.D.C. Aug. 31, 2006), citing 2 U.S.C. § 1901 (2003). USCP's officers and employees are appointed by Congress and whose funding derives from legislative appropriations. As such, the USCP is a part of the legislative, not the executive branch. *See id.* The Complaint fails to state a plausible NDAA claim because such claims necessarily involve executive branch agencies or departments, not the USCP. Defendant intends and reserves its right to seek dismissal of Plaintiff's NDAA claims for this reason as well. *See also* **Exhibit A**.

[11] The USCP OIG has no record of Plaintiff or his counsel submitting any complaints about Defendant to its office. *See* **Exhibit A**.

Plaintiff fails to plead facts sufficient to establish either the statutory prerequisites for a suit under the NDAA, or a plausible causal connection between any protected activity and any alleged retaliatory act.

As an initial matter, the Complaint fails to allege facts demonstrating compliance with the administrative procedures required by the NDAA. Although Plaintiff invokes § 4712 as the sole basis for federal jurisdiction (*see* ECF No. 1 at ¶ 1), he does not identify the OIG with whom he allegedly filed complaints, does not allege when such complaints were filed, does not allege whether any investigation occurred, does not allege whether any report or determination was issue, and does not allege when or how administrative remedies were exhausted. These omissions are particularly significant because the statute conditions a plaintiff's ability to pursue a *de novo* action in federal district court upon completion or deemed exhaustion of the administrative process.

The Complaint also fails to plausibly allege retaliation. To establish a causal connection, Plaintiff must allege facts supporting a reasonable inference that the individuals who allegedly retaliated against him knew of his protected activity. Yet the Complaint contains <u>no</u> factual allegations establishing that Cutlip knew of Plaintiff's complaints to Webb and/or Gray, or any other company representative. In fact, the Complaint does not even allege that Johnson had knowledge of Plaintiff's Complaint until, at the earliest, August 2024 when Plaintiff alleges he met with Johnson and "informed Johnson that [Plaintiff] had been retaliated against by Cutlip for speaking with HR about Cutlip's fraudulent actions." ECF No. 1 at ¶ 22. Although the Complaint alleges Johnson offered Plaintiff a transfer opportunity during the August 2024 meeting, Plaintiff does not assert any factual allegations indicating (or even suggesting) Johnson knew of any protected disclosures made by Plaintiff prior to that meeting.

Absent factual allegations demonstrating knowledge, Plaintiff cannot plausibly allege that either individual acted because of protected activity. The Complaint instead asks the Court to speculate and make serious assumptions, including that whenever a complaint is made to anyone at GGT, every single person within the organization becomes aware of it. *See Iqbal*, 556 U.S. at 678 (a complaint with "naked assertion[s]" devoid of "further factual enhancement" is not enough to state a plausible claim) (quoting *Twombly*, 550 U.S. at 557).

The timing allegations further undermine causation. Plaintiff alleges that he made complaints during April and July 2024, and in response to his complaints met with Webb and Gray. (ECF No. 1 at ¶¶ 18, 21, 37 & 40). The Complaint does not actually include an allegation that anyone at GGT other than Webb and Gray had knowledge of the complaints Plaintiff sent to "HR" or their meeting. Although Plaintiff claims Johnson was "from HR," there are no facts alleged indicating Johnson was involved in Plaintiff's meeting with Webb and Gray, that anyone suggested to Plaintiff that Johnson was aware of those complaints or meetings, or that Johnson had any knowledge whatsoever of Plaintiff's April and July 2024 complaints/meetings. Plaintiff attaching the label of "HR" to Johnson, without providing *any* factual support whatsoever, is the kind of "naked assertions" and labels routinely rejected by courts.[12] *See id*. at ¶ 22.

The only possible involvement by Johnson included in Plaintiff's Complaint relates to the meeting in August 2024. *See id* at ¶¶ 22, 41. It was during this meeting that Plaintiff

[12] As set forth in Cooper's declaration, Johnson's job title is/was Director of Customer Support and Services. *See* **Exhibit B** at ¶ 28. However, the Court need not rely upon the declaration when deciding to dismiss Plaintiff's case pursuant to Rule 12(b)(6) because Plaintiff's "labels and conclusions" are insufficient to overcome a Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555 (To withstand a Rule 12(b)(6) motion to dismiss, the complaint must include "more than labels and conclusions.").

claims he first talked to Johnson about alleged retaliation by Cutlip after Plaintiff complained to "HR" about Cutlip's "fraudulent actions, particularly Cutlip not showing up for work, and falsifying his time cards [sic]." *Id.* at ¶ 22. Also during this meeting is when Plaintiff said Johnson offered Plaintiff the option of transferring to a different team, which Plaintiff viewed as "unfair" and so he rejected the offer. *Id.* To be clear, the Complaint does not include an allegation that the offer of transfer was any form of retaliation or motivated in any way by any protected activity by Plaintiff.

Plaintiff did not resign until May 2025, approximately one year after his last meetings with Webb, Gray and Johnson in July-August 2024. The Complaint identifies no acts of retaliation occurring between July 2024 and Plaintiff's resignation in May 2025. There also are no allegations that Plaintiff reported anything else to GGT at any point. While Plaintiff does allege he made a separate report to a gentleman named Timothy Fonseca, this person was not employed by GGT and Plaintiff does not allege Fonseca relayed information to GGT about Plaintiff's complaint to Fonseca. *See id.* at ¶ 23.

Even assuming Plaintiff's allegations about purported retaliation by Cutlip were accepted as true, he still fails to state a plausible claim for relief. Again, packing a complaint with personal opinions and assumptions, without the detailed factual enhancement support, fails to allow a reasonable inference that liability exists. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Count I of the Complaint fails to state a plausible claim for relief under the NDAA and should be dismissed.

***2. "Constructive Discharge" Claim Should be Dismissed – Count II***

Count II of the Complaint does not identify a viable cause of action under federal law. The Complaint cites to no federal statute, common law tort, contract claim, or any

other independent cause of action. Constructive discharge is a doctrine that may satisfy an adverse-action element of an otherwise viable claim. However, it is not a standalone source of liability. Because Count II of the Complaint identifies no statutory or common law basis for relief independent of Counts I and III, it fails to state a claim upon which relief can be granted.

Additionally, the Complaint contains absolutely no factual allegation that could reasonably support Plaintiff's assertion of "on-going" retaliation, much less anything that could be described as "pervasive." As a result, Plaintiff's incredible claim that he was "forced" to resign some eight (8) months after his last meeting with anyone at GGT about Cutlip is not credible.

Much like his NDAA retaliation claim (and his FCA claims, discussed below), Plaintiff's "constructive discharge" claim has other fatal problems too. Plaintiff's "belief" that fraud was occurring is nothing more than his own fantastical speculation. He has not alleged the terms of the contracts between GGT and the USCP. He has not alleged knowledge of GGT's timekeeping policies. He has not alleged facts related to GGT's payroll processes. He has not alleged any facts indicating that Cutlip's absences and "false" or "fraudulent" timekeeping practices, even if true, would impact, in any way, payments made to GGT under the USCP contract.

Count II of the Complaint also should be dismissed for failure to state a claim because the Complaint lacks facts sufficient to state a plausible claim for retaliation. Plaintiff appears to believe that his reports to Webb and Gray in April and July 2024 automatically impute knowledge on to Cutlip. However, absent well-pleaded allegations that reasonably indicate Cutlip was aware of Plaintiff's two complaints to Webb and Gray, any claim that Cutlip retaliated against Plaintiff in response to those claim fails.

Similarly, Plaintiff cannot establish that Johnson offering to Plaintiff the option to transfer to a different team was retaliation. To be clear, the Complaint does not allege that the offer was retaliatory in nature. However, even if it did, Plaintiff has not alleged Johnson had any knowledge of Plaintiff's complaint to Webb and Gray. Plaintiff cannot establish, even if all facts alleged were true, that Johnson's August 2024 transfer offer was motivated in any way by his desire to retaliate against Plaintiff. Rather, the Complaint allegations indicate that the decision to offer Plaintiff the option to transfer was made during the same call in which Plaintiff claims he complained to Johnson about Cutlip. Plaintiff has not alleged Johnson had the unilateral authority to make such an offer "on the spot," which would have to be the case if Plaintiff were claiming the offer somehow was retaliatory in nature. It's clear Plaintiff is not alleging the offer was in retaliation for his prior reports to Webb and Gray, which is why he instead described the offer as "unfair," not retaliatory.

Any claim based upon Plaintiff's allegations that Cutlip's actions amounted to retaliation also fail. First, and as outlined above, Plaintiff's September 2024 email to Cutlip was insufficient to put Cutlip on notice of any protected activity. Second, even if Plaitiff's email to Cutlip was enough to provide notice, which it was not, the actions Plaintiff alleges as attributable to Cutlip do not support a plausible claim for relief. Instead, they are a spattering of Plaintiff's own speculation and conjecture, which is not enough to save his claims.

Finally, even Plaintiff's March 21, 2025 "disclosure" to Fonseca does not rescue Plaintiff's claims, Plaintiff does not allege Fonseca is employed by GGT (because he is not), that Fonseca relayed Plaintiff's "disclosure" to anyone at GGT (because he did not), or that anyone took any retaliatory action in response (because they did not). As a result,

these allegations lack the requisite factual detail needed to state a plausible claim.

Count II of the Complaint should be dismissed because "constructive discharge" is not a viable standalone cause of action and because the Complaint allegations fall well below the basic pleading standards required to state a plausible claim for relief.

#### *3. FCA Retaliation Claim Should be Dismissed – Count III*

Many of the reasons discussed about regarding Counts I and II apply with equal force to Count III. Plaintiff has simply failed to state a plausible claim for relief for FCA retaliation. The Complaint does not include factual allegations about the terms of the contract at issue, how (or whether) Cutlip's absences and/or timekeeping practices were inconsistent with the terms of the contract – or had any impact whatsoever on payments made under the contract – that relevant actions and decision makers had the requisite knowledge needed for a viable retaliation claim, or that any belief Plaintiff may have had about alleged illegal or fraudulent activity was reasonable.

For many of the same reasons Plaintiff's other claims fail, Plaintiff's FCA claim should be dismissed for failure to state a plausible claim for which relief may be granted.

### C. Any Claims Not Dismissed Should be Transferred

Courts read Federal Rule 12(b)(3) in conjunction with 28 U.S.C. § 1406(a), which requires dismissal of a case filed in the improper venue "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision to dismiss or transfer a case rests within the sound discretion of the court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), cert. denied, 467 U.S. 1210 (1994).

When venue is proper in more than one locale, and convenience and justice favor adjudication in a different venue, the case may be transferred pursuant to 28 U.S.C. §

1404(a)." *Hunter*, 517 F.Supp.2d at 343. Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[T]he moving party bears the burden of establishing that transfer is proper." *Schmidt v. Am. Inst. of Physics*, 322 F.Supp.2d 28, 31 (D.D.C. 2004). A district court should "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of Section 1404(a) authorizes transfer even when venue is technically proper in the forum selected by the plaintiff." "Generally, an alternative forum is adequate if the defendants are subject to service of process there and the forum permits litigation of the subject matter of the dispute." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 74 (D.D.C. 2017). Courts have sometimes reframed the second requirement as whether the forum "would provide a plaintiff at least some remedy." *Air Crash*, 946 F.3d at 613.

When there is an adequate alternative forum, which there is, courts next balance public and private interest factors. *See Heuter*, 610 F.Supp.3d at 67. Courts in this District commonly consider the following private-interest factors: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses, particularly where important witnesses may be unavailable for live testimony; and (6) the ease of access to sources of proof. *Montgomery v. STG International, Inc.,* 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008);

*Sheffer v. Novartis Pharmaceuticals Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012).

Although a plaintiff who files suit in his home forum receives a strong presumption in favor of the plaintiff's chosen forum. *See Air Crash*, 946 F.3d at 613-614. "[W]hen the forum is not the plaintiff's home forum and most of the events occurred elsewhere." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 293 (D.D.C. 2011). And, if the plaintiff's choice of forum was "motivated by tactical advantage," the deference it receives is diminished even more. *Shi*, 918 F.3d at 950. Additionally, "[r]ule 12(b)(3) provides that a court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Corbett v. Jennifer*, 888 F.Supp.2d 42, 44 (D.D.C. Aug. 27, 2012), citing Fed. R. Civ. P. 12(b)(3)

The public interest factors include: (1) the transferee court's familiarity with the governing law; (2) the relative congestion of the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. *Montgomery*, 532 F. Supp. 2d at 34; *Sheffer*, 873 F. Supp. 2d at 380. The moving party bears the burden of showing that transfer is appropriate, but the Court has broad discretion to conduct an individualized, case-specific assessment of convenience and fairness. *See Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 330–31 (D.D.C. 2020).

### D. The Private Interest Factors Favor Transfer

Should the Court decide not to dismiss the case for improper, venue, the private-interest factors support transferring the case to the Middle District of Tennessee.

#### 1. *Plaintiff's Choice of Forum Receives Reduced Deference*

Although a plaintiff's choice of forum is ordinarily entitled to deference, that deference is weakened here because Plaintiff is not a resident of the chosen forum and most of the relevant events occurred in Franklin, Tennessee. *See Schmidt v. Am. Inst. of*

*Physics*, 322 F.Supp.2d 28, 33 (D.D.C. 2004) (courts ordinarily give deference to plaintiff's choice of forum); and *see Hunter v. Johanns*, 517 F.Supp.2d 340, 344 (D.D.C. 2007) (deference given to plaintiff's choice of forum is weakened when forum is not plaintiff's home forum and most of the relevant events occurred elsewhere); *see also Kafack v. Primerica Life Ins. Co.*, 934 F.Supp. 3, 6–7 (D.D.C. 1996) (stating in support of a transfer that "the material events that constitute the factual predicate for the plaintiff's claims occurred" in the transferee district).

Here, Plaintiff is a Maryland resident, not a District of Columbia resident. Plaintiff's own filings identify his residence in Huntingtown, Maryland. The District of Columbia, therefore, is not Plaintiff's home forum. By contrast, Defendant's identified corporate address, principal operations, and relevant corporate witnesses and records are in Tennessee, nearly 700 miles away from the District of Columbia. Plaintiff's choice of the District of Columbia should receive, at most, limited deference. *Lans*, 786 F. Supp. 2d at 293 (noting that "when the forum is not the plaintiff's home forum and most of the events occurred elsewhere," the deference given to plaintiff's chosen forum is diminished); *Montgomery*, 532 F. Supp.2d at 33 (deference to plaintiff's chosen forum weakened when plaintiff is not resident of the forum and most relevant events occurred elsewhere); *Sheffer,* 873 F.Supp.2d at 376 (deference is diminished where the chosen forum lacks meaningful ties to the controversy and the proposed transferee forum has substantial ties to the parties and subject matter).

***2. Defendant's Choice of Forum Favors Transfer***

Defendant seeks transfer to its home forum, the Middle District of Tennessee. That district is not a forum selected for tactical inconvenience; it is the district where Defendant is located, where relevant corporate records are maintained, where

Defendant's Human Resources, payroll, and management personnel are located or coordinated, and where Defendant can most efficiently defend claims challenging its employment practices. As discussed in detail above, Defendant's choice is entitled to weight because the requested forum has substantial ties to the parties and the subject matter of the litigation. Transfer to the Middle District of Tennessee would place the case in the district most closely connected to Defendant's alleged employment decisions and internal response to Plaintiff's reports. *See* **Exhibit B***; see also Hayes v. RCA Serv. Co.*, 546 F.Supp. 661, 663 (D.D.C. 1982) (When determining where an alleged unlawful employment practice was committed, "the Court must look to the place where the decisions and actions concerning the employment practices occurred.").

### *3. Because the Claims Arose in Tennessee, Transfer is Appropriate*

Defendant's chosen forum is appropriate because Tennessee is where the claims arose. Although Plaintiff alleges that some field work took place in the District of Columbia, the core claims are not limited to where vehicular-barrier maintenance occurred. The pleaded causes of action are retaliation and constructive discharge. Those claims turn on Defendant's knowledge, intent, employment decisions, payroll, and Human Resources actions, contract administration, and alleged remedial failures. *See Ciralsky v. C.I.A.*, 689 F.Supp.2d 141 (2010) (court held that D.C. was improper venue despite plaintiff working there because bulk of events giving rise to the claim occurred in Virginia, where other defendants also worked).

The Complaint repeatedly focuses on communications with Defendant's Human Resources and payroll personnel, alleged management's decisions regarding the offer to Plaintiff of a transfer, and alleged constructive discharge caused by Defendant's conduct. Those corporate decisions and records are centered in Tennessee. Thus, even if some

worksite facts relate to the District of Columbia, the material employment and corporate facts substantially arose in Tennessee. *See United States v. Quicken Loans Inc.*, 217 F.Supp.3d 272 (2016) (court transferred FCA case from D.C. to Eastern District of Michigan where relevant decisions and actions took place); *McLaughlin v. Holder*, 864 F. Supp. 2d 134 (D.D.C. 2012) (venue improper in D.C. where alleged unlawful employment practices committed and employment records maintained in Middle District of Florida) *Johnson v. Washington Gas Light Co*., 89 F.Supp.2d 45 (2000) (even though plaintiff worked at D.C. location, location where "discriminatory activities, retaliation, and reprisal" allegedly took place and where "alleged discriminatory decision was made" determined venue).

***4. Convenience also Supports Transfer***

Transfer will be more convenient for Defendant, whose principal office is in Franklin, Tennessee, and whose relevant personnel and records are located in, and coordinated from, Tennessee. *See* **Exhibit B**. Plaintiff is not a District of Columbia resident; he resides in Maryland. Litigating in the District of Columbia is, therefore, not litigation in Plaintiff's home forum and is entitled to little, if any, deference. *See Montgomery*, 532 F. Supp.2d at 33 (deference to plaintiff's chosen forum weakened when plaintiff is not resident of the forum and most relevant events occurred elsewhere);

The Middle District of Tennessee is a logical and convenient forum for this dispute. It avoids requiring a Tennessee-based company and its relevant corporate personnel to litigate an employment and whistleblower dispute in a forum outside Defendant's home district when the plaintiff is not a resident of that forum.

The convenience of witnesses is often one of the most important factors in the transfer analysis. *See Sheffer*, 873 F. Supp. 2d at 378. Here, key witnesses are likely to

include Defendant's Human Resources representatives, payroll personnel, managers, contract-administration personnel, and custodians of relevant employment and billing records. *See* **Exhibit B**. The Complaint identifies Defendant personnel and management functions that are naturally tied to Defendant's Tennessee operations, including human resources, payroll, and corporate response to Plaintiff's allegations. *See id.*

To the extent current or former employees of Defendant must testify regarding Plaintiff's reports, payroll practices, scheduling, overtime, internal investigations, contract administration, or the reasons for any challenged employment actions, the Middle District of Tennessee will be more convenient. *See id.* By contrast, the District of Columbia is not the residence of either party, and Plaintiff has not identified any reason why Tennessee-based corporate witnesses should be required to appear in this District.

Relevant documents and electronically stored information are maintained and controlled by Defendant in Tennessee, including personnel records, payroll records, timekeeping records, Human Resources communications, internal complaint materials, contract-administration records, and records relating to the alleged federal contract. *See id.* While modern technology reduces the weight of this factor, courts still recognize that the location of records may favor transfer when the relevant proof is concentrated in the transferee district. *See Sheffer*, 873 F. Supp. 2d at 379.

The ease-of-access factor therefore favors transfer to the Middle District of Tennessee.

### E. The Public Interest Factors Favor Transfer

#### ***1. Both Courts Are Equally Familiar with the Governing Federal Law***

Federal courts are presumed equally competent to apply federal law. *See Montgomery*, 532 F. Supp. 2d at 34; *Wolfram Alpha*, 490 F. Supp. 3d at 337. Because

this case involves federal claims, the familiarity factor is of little consequence. *See Miller v. Insulation Contractors, Inc.*, 608 F.Supp.2d 97, 103 (D.D.C.2009) ("all federal courts are presumed to be equally familiar with the law governing federal statutory claims").

***2. Relative Court Congestion Does Not Preclude Transfer***

According to the latest information available in the US Courts Judicial Caseload Profile Report, as of March 31, 2026, the District of Columbia had 7,138 pending cases and the Middle District of Tennessee had 2,607. See Judicial Caseload Profile. If there were not a noticeable difference in the respective caseloads, this factor would be neutral. *See Montgomery*, 532 F. Supp. 2d at 34. However, it appears the Middle District of Tennessee is better positions to take on additional cases when compared to the District of Columbia.

Because the case is at an early stage, transfer will not waste judicial resources or delay a court already deeply familiar with the merits. No scheduling order, discovery plan, or substantive merits ruling should prevent transfer to the more appropriate forum. Accordingly, this factor weighs in favor of transfer.

***3. Tennessee Has the Strongest Local Interest in the Corporate Employment Dispute***

The Middle District of Tennessee has a strong local interest in adjudicating claims against a Tennessee-based employer concerning alleged employment decisions, HR and payroll responses, internal complaint handling, and contract-administration conduct centered in Tennessee. The Complaint challenges Defendant's alleged corporate conduct and seeks substantial damages from Defendant. Tennessee therefore has a direct interest in resolving the controversy involving a business located within its borders.

The District of Columbia's connection is more limited. Plaintiff does not reside

here. Defendant is not headquartered here. Although Plaintiff alleges that some work was performed at or around the United States Capitol Police campus, Plaintiff's claims ultimately focus on Defendant's alleged retaliatory conduct, constructive discharge, HR response, payroll and timekeeping issues, and internal management decisions. Those issues are most closely connected to Defendant's Tennessee operations. By contrast, the District of Columbia is "thousands of miles away from the majority of witnesses and [] evidence[.]" *MBI Grp*., 558 F. Supp. 2d at 34. "Administrative difficulties at such a great distance are 'obvious.'" *Heuter*, 610 F.Supp.3d at 70, (quoting *MBI Grp*., 558 F.Supp. 2d at 34). "Those difficulties appear the most glaringly in the expense of travel time for all parties to reach the District [of Columbia]." *Heuter*, 610 F.Supp.3d at 70.

As courts in this District have recognized, local controversies should generally be decided at home. *See Sheffer*, 873 F. Supp. 2d at 382; *Wolfram Alpha*, 490 F. Supp. 3d at 339–40. This factor favors transfer.

## IV. CONCLUSION

For the foregoing reasons, Defendant Global Grab Technologies, Inc. respectfully requests that the Court grant its Motion and Dismiss the case pursuant to Rule 12(b)(3) for improper venue and/or Rule 12(b)6) for failure to state a claim. Alternatively, Defendant respectfully asks the Court to transfer any claims not dismissed to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted on this, the 6th day of June, 2026.

*/s/ Christopher J. Schulte*_____
Christopher J. Schulte (DC Bar No. 500878)
**FISHER & PHILLIPS LLP**
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
Telephone: (202) 559-2440
Facsimile: (202) 978-3788
Email: cschulte@fisherphillips.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Christopher J. Schulte, hereby certify that on this, the 5th day of June 2026, I electronically filed the foregoing ***Statement of Points of Law and Authority in Support of Defendant's Motion to Dismiss*** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Paul V. Bennett, Esq.
BENNETT LEGAL SERVICES, LLC
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
Telephone: (410) 353-4994
pbennett@bennettlaw.net

*Counsel for Plaintiff*

*/s/ Christopher J. Schulte*_____
Christopher J. Schulte