**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATTHEW DAVID WONNEMAN,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL GRAB TECHNOLOGIES INC.,<br><br>Defendant. | Civil Action No. 26-cv-1267 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Matthew David Wonneman brings suit against his former employer, defendant Global Grab Technologies Inc., alleging retaliation in violation of the whistleblower provision of the National Defense Authorization Act of 2013 ("NDAA"), 41 U.S.C. § 4712, and the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), for disclosing his concerns about his supervisor's alleged manipulation of the company's timekeeping system and absences from work. *See* Compl. ¶¶ 25-64, ECF No. 1. Before the Court is defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction due to plaintiff's failure to exhaust administrative remedies, improper venue and failure to state a plausible claim for relief, under Federal Rules of Civil Procedure 12(b)(1), (3) and (6), respectively. *See* Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 8. Although venue is proper and subject matter jurisdiction is present, for the reasons that follow, defendant's motion to dismiss for failure to state a claim is granted.

## I. BACKGROUND

Set out below is a summary of the relevant factual background and procedural history to resolve the pending motion.

### A. Factual Background

The relevant facts as alleged in plaintiff's complaint are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). Plaintiff was employed by defendant from July 16, 2017, to May 13, 2025, during which eight-year period defendant held a federal government contract that required defendant "to provide physical security onsite for repairs and maintenance on vehicular barriers around the United States Capital Police (the 'USCP') campus." Compl. ¶¶ 6-7, 9, 24. Plaintiff was one of six technicians employed by defendant to perform such onsite repairs and maintenance, including on vehicular barriers at "the Senate side, North Capitol and North Library of Congress." *Id.* ¶¶ 9, 11. From 2017 through early 2020, defendant required plaintiff to "clock in on his phone" and "badge in and out of USCP time clocks" to facilitate defendant's "payroll" and "to document his presence." *Id.* ¶ 12. That timekeeping system "was modified in or around 2020, during COVID, to be touchless." *Id.*

During his employment with defendant, plaintiff's immediate supervisor was Chris Cutlip, who served as "USCP Project Supervisor & Service Specialist." *Id.* ¶ 7. Plaintiff alleges, "[o]n information and belief," that Cutlip "learned how to manipulate the newly modified timekeeping system by having a night shift employee badge in and out" and "misled" the "acting supervisor for [d]efendant's [c]ontract with USCP" to believe "that the USCP badging system was broken and there was no need to follow it." *Id.* ¶ 13. As a result, beginning in or around October 2022, "Cutlip was able to miss work without reporting his absences" by "pressur[ing]" plaintiff and two other team members "to cover his shifts," "hide his absences from the rest of the team members," and "come in early to run service calls" that Cutlip had left open in his absence. *Id.* ¶ 14. Within six months, plaintiff and his two other team members "were working

eighteen (18) hour[] shifts covering for Cutlip's absences." *Id.* ¶ 15. Tensions began to boil over on March 20, 2023, when "Cutlip pressured [p]laintiff to cover for him once again" and plaintiff "protested that Cutlip was already taking off" multiple days a week and "covering for [Cutlip] was exhausting." *Id.* ¶ 16.

Plaintiff's first attempt to voice concerns about "issues at work and Cutlip's absences" was in an email to Cutlip himself on September 11, 2023, after which "Cutlip started treating [p]laintiff with hostility, attempted to change [p]laintiff's shifts and threatened [p]laintiff's employment status." *Id.* ¶ 17. Plaintiff eventually escalated the report by "email[ing] [d]efendant's Human Resources ('HR')" on April 24, 2024, to report "Cutlip's absences[] and Cutlip's false reports as to his work hours." *Id.* ¶ 18. The following week, plaintiff attended a meeting with a member of defendant's payroll department and defendant's "Acting HR" representative, at which meeting plaintiff "reiterated Cutlip's illegal and fraudulent activities," and the payroll staff member "indicated that HR had no prior knowledge of this situation." *Id.*

Following a meeting between defendant's "Acting HR" representative and Cutlip on May 9, 2024, "Cutlip attempted to make changes to [p]laintiff's schedule and to remove [p]laintiff's bi-weekly overtime" as "a form of retaliation for [p]laintiff's speaking with [d]efendant's HR Department." *Id.* ¶ 19. For example, during "an in-person meeting with Cutlip and the other team members" on May 15, 2024, Cutlip "indicated that he was changing [p]laintiff's shifts" and "stated that he had been on Capitol Hill a long time and that he was not going anywhere, and that if anyone was unhappy, then they should leave." *Id.* ¶ 20. Plaintiff interpreted "Cutlip's words" as "a direct threat to [p]laintiff's continued employment." *Id.* In the following months, plaintiff continued to report "increasingly severe" retaliation from Cutlip, including in an "email to HR" on July 19, 2024, and in a meeting with a member of HR on

August 13, 2024. *Id.* ¶¶ 21-22. During the August meeting, plaintiff shared that "he had been retaliated against by Cutlip for speaking with HR about Cutlip's fraudulent actions, particularly Cutlip not showing up for work, and falsifying his time cards," and the HR staff member responded with a proposal "to transfer [p]laintiff to a different team, changing [his] shift and work location." *Id.* ¶ 22. Plaintiff rejected that proposal as "unfair to him." *Id.*

Plaintiff's final disclosure came on March 21, 2025, when he told the "acting supervisor for [d]efendant's [c]ontract with USCP" about "Cutlip's false time reports and unfounded billable hours." *Id.* ¶ 23. Ultimately, on May 13, 2025, plaintiff alleges that he "was forced to resign from his employment with [d]efendant" due to the "pervasive on-going retaliation by Cutlip." *Id.* ¶ 24.

**B. Procedural History**

Plaintiff filed this lawsuit on April 14, 2026, alleging claims of whistleblower retaliation under the NDAA, 41 U.S.C. § 4712 (Count I), constructive discharge (Count II), and retaliation under the FCA, 31 U.S.C. § 3730(h) (Count III), *see* Compl. ¶¶ 25-64, in response to which defendant has filed the pending motion to dismiss, *see* Def.'s Mot. at 1-2; Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem") at 1, ECF 9. Alternatively, defendant argues that "any claims not dismissed should be transferred to the Middle District of Tennessee," pursuant to 28 U.S.C. § 1404(a). Def.'s Mem. at 1. Defendant filed no reply brief, timely on June 25, 2026, or otherwise, following plaintiff's filing of an opposition, *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 10; *see also* D.D.C. Local Civil Rule 7(d) (setting the deadline to file a reply brief as "seven days after service of the memorandum in opposition"), and thus this motion will be resolved on the current record.

## II. APPLICABLE LEGAL STANDARDS

### A. Dismissal for Improper Venue

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). The federal venue statute requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case filed "in the wrong division or district." 28 U.S.C. § 1406(a). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 55 (2013). In determining whether venue is proper, the plaintiff bears the burden of demonstrating "proper venue with respect to each cause of action and each [defendant]," *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978), and the court "accepts the plaintiff's well-pled factual allegations regarding venue as true[] [and] draws all reasonable inferences from those allegations in the plaintiff's favor," *McCain v. Bank of America*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (quoting *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011)). If venue is improper, the decision whether to transfer or dismiss the case "to any district or division in which it could have been brought," 28 U.S.C. § 1406(a), "rests within the sound discretion of the district court," *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

### B. Dismissal for Lack of Subject Matter Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by the Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ.

P. 12(h)(3). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When reviewing such a motion, the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016), "accept the well-pleaded factual allegations as true," and "draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio*, 797 F.3d at 19). The court may also "consider materials outside the pleadings to determine [its] jurisdiction." *Id.* at 866 n.7; *see also West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) ("As necessary, [a court may] cull additional facts from other parts of the record." (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005))).

**C. Dismissal for Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint in favor of the plaintiff," *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (internal quotation marks omitted) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Courts, however, "need not accept inferences . . . not supported by the facts set out in the complaint, nor

must the court accept legal conclusions." *Id.* (quoting *Hettinga*, 677 F.4th at 476). In determining whether a complaint fails to state a claim, a court may consider only "the facts alleged in the complaint, documents attached thereto or incorporated therein and matters of which it may take judicial notice." *Simmons v. Rubio*, 170 F.4th 905, 910 (D.C. Cir. 2026) (quoting *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

## III. DISCUSSION

Defendant moves to dismiss plaintiff's complaint on the grounds that venue is improper in the District of Columbia, that subject matter jurisdiction is lacking over plaintiff's NDAA claim in Count I because plaintiff failed to properly exhaust his administrative remedies, and that plaintiff failed to allege facts supporting a plausible claim for relief as to each of the three counts of his complaint. *See* Def.'s Mem. at 1. Notably, plaintiff has conceded that the "constructive discharge allegations [in Count II] are properly understood as part of the adverse action element of" and "subsumed within" his retaliation claims in "Counts I and III," rather than as "a standalone count." Pl.'s Opp'n at 11.[1] With that narrowing concession in mind, each argument for dismissal of the two claims asserted for retaliation under the NDAA, 41 U.S.C. § 4712 (Count I), and under the FCA, 31 U.S.C. § 3730(h) (Count III), is discussed *seriatim*.

### A. Venue Is Proper in the District of Columbia

Defendant first argues that "[t]he District of Columbia is not the proper venue for [p]laintiff's claims because neither party is a resident of this district, most of [the] acts and omissions relevant to the claims occurred in Tennessee, and the Middle District of Tennessee is an available venue." Def.'s Mem. at 10. Whether venue is improper "depends exclusively on

---

[1] Plaintiff requests "leave to amend to clarify that the constructive discharge theory supports, and is subsumed within, Counts I and III," Pl.'s Opp'n at 11, but this request is denied since the adverse action elements of plaintiff's NDAA and FCA retaliation claims need not be addressed as these claims are dismissed on other grounds, *see infra* Part III.C and note 7.

whether the court in which the case was brought satisfies the requirements of federal venue laws," *Atl. Marine Constr. Co.*, 571 U.S. at 55, which, in this case, include the general federal venue provision, *see* 28 U.S.C. § 1391, and the special venue provision of the False Claim Act, *see* 31 U.S.C. § 3732(a). Plaintiff bears the burden of establishing "proper venue with respect to each cause of action." *Lamont*, 590 F.2d at 1135.

Plaintiff contends that venue is proper as to his claim of NDAA whistleblower retaliation, under Section 1391(b)(2), *see* Pl.'s Opp'n at 4-5, which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). "This section does not require a plaintiff to bring suit in a district where every event that supports an element of the claim occurred; rather, it merely requires a plaintiff to show that some considerable portion of the events occurred in their chosen forum." *Nabong v. Paddayuman*, 289 F. Supp. 3d 131, 134 (D.D.C. 2018) (quoting *Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93 (D.D.C. 2014)). Indeed, "the question is not which district is the best venue, or which venue has the most significant connection to the claim," but rather "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1, 11 (D.D.C. 2019) (internal quotation marks omitted) (quoting *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 96 (D.D.C. 2012)).

Defendant objects to plaintiff's chosen venue because the "relevant decision makers" responding to plaintiff's disclosures and "all of [defendant's] personnel records" are "located in Tennessee," and "all other managerial functions," including "human resources" functions, "take place exclusively at and out of [defendant's] Tennessee location." Def.'s Mem. at 13-14. Even accepting those facts, however, plaintiff has established that a "substantial part" of the material

events or omissions occurred in the District of Columbia. *See Hale v. Collis*, No. 21-cv-1469 (JEB), 2022 WL 3016747, at *8 (D.D.C. July 29, 2022) ("Showing that substantial events occurred in District A, therefore, does not rebut a contention that *other* substantial events occurred in District B, where venue might be proper as well." (emphasis in original)). Plaintiff asserts that he worked as a technician "perform[ing] the onsite repairs and maintenance on the vehicular barriers" around "the Senate side, North Capitol and North Library of Congress," Compl. ¶¶ 9-11; that Cutlip stated at an "in-person meeting" on May 15, 2024, that Cutlip "had been on Capitol Hill a long time and that he was not going anywhere," *id.* ¶ 20; and that the allegedly retaliatory schedule changes and reduction of overtime opportunities affected plaintiff at his job site in the District of Columbia, *see id.* at ¶¶ 19-22; *see also* Pl.'s Opp'n at 4-5. These allegations amply support venue for this case in this district under Section 1391(b)(2). *See Media Matters for Am. v. Paxton*, 138 F.4th 563, 583 (D.C. Cir. 2025) (holding that venue was proper where the "ensuing adverse effects" of defendant's wrongful conduct "occurred primarily in the District"); *Glob. Reach, Inc. v. Hawkwood Grp. LLC*, No. 26-cv-1394 (BAH), 2026 WL 1329238, at *17 (D.D.C. May 13, 2026) (noting that defendant's venue objections were "easily dispatched" because "much of the effects of the tortious conduct manifested in the District of Columbia where plaintiff has incurred . . . damages").

Plaintiff further contends that venue is proper as to Count III of the complaint under the FCA's special venue provision, *see* Pl.'s Opp'n at 7, which provides that venue is proper where the defendant "transacts business," 31 U.S.C. § 3732(a). Defendant does not contest that venue lies in this district as to plaintiff's FCA retaliation claim, *see generally* Def.'s Mem., or that defendant transacts business in the District of Columbia through its performance of the contract "to provide physical security onsite for repairs and maintenance on vehicular barriers around the

United States Capital Police . . . campus," Compl. ¶ 9. Thus, "plaintiff's well-pled factual allegations regarding venue" are properly accepted "as true" as to this count. *McCain*, 13 F. Supp. 3d at 51 (internal citation and quotation marks omitted).

Since plaintiff has established that venue is proper, defendant's motion to dismiss for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), is denied, without the need to address defendant's alternative argument for transfer under 28 U.S.C. § 1406(a).

**B. Subject Matter Jurisdiction May Be Properly Exercised**

Defendant next argues that plaintiff's claim, in Count I, for relief under the whistleblower provision of the NDAA, 41 U.S.C. § 4712, should be dismissed because the complaint "lacks sufficient factual detail establishing that [p]laintiff complied with his pre-suit administration exhaustion requirements." Def.'s Mem. at 3. Those exhaustion requirements provide that a plaintiff alleging discharge, demotion, or discrimination as a reprisal for disclosing certain protected information must "submit a complaint to the Inspector General of the executive agency involved" within "three years after the date on which the alleged reprisal took place," 41 U.S.C. § 4712(b)(1), (4), which complaint triggers an obligation of the relevant Office of the Inspector General ("OIG") to investigate and submit a report to the involved parties and agency head "within 180 days after receiving the complaint," *id.* § 4712(b)(1)-(2). If the relevant agency head "issues an order denying relief . . . or has not issued an order within 210 days after the submission of a complaint," or "30 days after the expiration of [an] extension of time" for an OIG report, the plaintiff "shall be deemed to have exhausted all administrative remedies with respect to the complaint" and "may bring a de novo action at law or equity against the contractor, subcontractor, grantee, subgrantee, or personal services contractor to seek compensatory damages and other relief." *Id.* § 4712(c)(2). Such "de novo action at law or equity" must be

filed within "two years after the date on which remedies are deemed to have been exhausted." *Id.*

Here, plaintiff asserts that "on or about April 15, 2025 individually, and on June 4, 2025, through [counsel], [he] submitted Whistleblower Retaliation Complaints with the Office of the Inspector General," and as such, "has properly exhausted his administrative remedies before timely filing suit." Compl. ¶¶ 4-5. True, as defendant protests, plaintiff did not "identify the OIG with whom he allegedly filed complaints," the "specific complaint(s) he lodged," or "what, if anything, was done in response to his [OIG] complaints." Def.'s Mem. at 3, 17. Plaintiff did, however, attest that he submitted the OIG complaints to satisfy the exhaustion requirement on April 15 and June 4 of last year—more than 210 days before he filed the instant lawsuit, less than three years after the date on which the alleged reprisal took place, and within the two-year statute of limitations period. *See* 41 U.S.C. § 4712(b)(4), (c)(2). Plaintiff also attached copies of his OIG complaints as exhibits to his opposition brief, confirming their submission to the OIG of the U.S. Department of Health and Human Services on the dates alleged in the complaint. *See* Pl.'s Opp'n, Decl. of Paul V. Bennet, Ex. A, ECF 10-2; *Kareem*, 986 F.3d at 866 n.7 (noting that a court may "consider materials outside the pleadings to determine [its] jurisdiction.").[2]

At the motion to dismiss stage, such allegations plausibly show that plaintiff satisfied Section 4712(c)(2)'s exhaustion requirement. *See Wykosky v. ATCS, PLLC*, No. 22-cv-01881 (APM), 2023 WL 4547992, at *4 (D.D.C. July 14, 2023) (denying a motion to dismiss a Section 4712 claim "for failure to exhaust administrative remedies" because "the failure to exhaust is an affirmative defense that the defendant bears the burden of pleading and proving");

[2] Defendant did not file a reply brief and thus did not address whether the OIG of the U.S. Department of Health and Human Services is the OIG "of the executive agency involved," as required by 41 U.S.C. § 4712(b)(1). Without input from defendant and consistent with the requirement to draw all inferences in plaintiff's favor at the motion to dismiss stage, this question is not further scrutinized.

*Pullen v. St. Gabriel Health Clinic Inc.*, No. CV 25-52-JWD-EWD, 2026 WL 499596, at *19 (M.D. La. Feb. 23, 2026) (holding that "[w]hen read in the light most favorable to the Plaintiff, the Complaint does allege that Plaintiff lodged a whistleblower complaint with the OIG" despite a lack of detailed pleadings about the date of filing and the substance of the OIG complaint); *Johnsen v. L3Harris Techs., Inc.*, No. 6:24-cv-1636-RBD-DCI, 2025 WL 3669586, at *2 (M.D. Fla. Mar. 27, 2025) (observing that the complaint "could have been clearer about OIG not timely issuing a determination," but finding that, "drawing inferences from the facts alleged in the light most favorable to [the plaintiff]," he "sufficiently asserted exhaustion").[3] The Court thus cannot dismiss plaintiff's claim alleging an NDAA Section 4712 violation for lack of exhaustion.[4]

### C. Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Turning to the merits, defendant asserts that plaintiff failed to state a claim for relief as to any count of the complaint. *See* Def.'s Mem. at 15. In assessing the sufficiency of plaintiff's factual allegations of retaliation under the NDAA and FCA to withstand a motion to dismiss under Rule 12(b)(6), only a limited scope of materials may be properly considered, namely, "the facts alleged in the complaint, documents attached thereto or incorporated therein and matters of which it may take judicial notice." *Simmons*, 170 F.4th at 910 (quoting *Abhe & Svoboda, Inc.*, 508 F.3d at 1059). As a result, the exhibits attached to defendant's motion to dismiss and

---

[3] This conclusion focusing on the allegations asserted in the complaint is not altered by the parties' agreement that plaintiff did not lodge his OIG complaints with the USCP OIG or their observation that the USCP OIG would not be the appropriate recipient because USCP is not an executive agency but is rather part of the legislative branch. *See* Def.'s Mem. at 16 nn.10-11; Pl.'s Opp'n at 8.

[4] Defendant appears to raise this exhaustion argument as part of its motion to dismiss for lack of subject matter jurisdiction. *See* Def.'s Mem. at 16-17 ("The Complaint's sole jurisdictional statement is tied to the NDAA. However, Plaintiff fails to plead facts sufficient to establish . . . the statutory prerequisites for a suit under the NDAA."). Whether the exhaustion requirement of Section 4712(c) is jurisdictional, as defendant assumes, is not so clear. *See, e.g.*, *Olson v. Microsoft Corp.*, No. 3:25-CV-0774-D, 2025 WL 2664321, at *3 (N.D. Tex. Sept. 17, 2025) (holding that Section 4712(c)'s exhaustion requirement is non-jurisdictional); *Iovino v. Michael Stapleton Assocs.*, 600 F. Supp. 3d 610, 622 n.4 (W.D. Va. 2022) (questioning the requirement's jurisdictional nature); *Thomas v. Hutson*, No. CV 24-768, 2025 WL 903131, at *1 n.5 (E.D. La. Mar. 25, 2025) (same). In any event, since plaintiff has sufficiently pleaded satisfaction of the exhaustion requirement, the question whether the NDAA's exhaustion requirement is jurisdictional or merely a claims-processing rule need not be resolved here.

plaintiff's opposition brief are not "attached to or incorporated by reference in the [complaint]" nor "judicially noticeable" and are thus "not properly before the [Court]," leaving only the allegations set forth in plaintiff's complaint to inform the resolution of this motion. *Lott v. Not-for-Profit Hosp. Corp.*, 319 F. Supp. 3d 277, 281 (D.D.C. 2018).[5]

**1. *Retaliation Under the National Defense Authorization Act***

To state a claim for whistleblower retaliation under the 2013 National Defense Authorization Act (NDAA), 41 U.S.C. § 4712, plaintiff must plausibly allege that (1) he was an employee of a government contractor, (2) he disclosed information that he "reasonably believed" was within the five categories of protected information under Section 4712(a)(1), and (3) "[his] disclosure was a contributing factor in the action taken against [him]." *Arawole v. Master Sec. Co.*, No. 23-cv-2413 (RBW), 2025 WL 947477, at *13 (D.D.C. Mar. 28, 2025) (quoting *Sargent v. Pompeo*, No. 19-cv-620 (CJN), 2020 WL 5505361, at *14 (D.D.C. Sept. 11, 2020)). Protected information under the NDAA's whistleblower provision includes "evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712(a)(1). Although "[t]he case law interpreting the anti-reprisal provision contained in the NDAA is slim," *Arawole*, 2025 WL 947477, at *14 (quoting *Fuerst v. Hous. Auth. of Atlanta*, No. 20-cv-2027 (MHC), 2020 WL 8299763, at *4 (N.D. Ga. Dec. 28, 2020), *aff'd*, 38 F.4th 860 (11th Cir. 2022)), plaintiffs are consistently required to allege facts demonstrating the objective

[5] Defendant's exhibits include, for example a declaration from defendant's President/Chief Operating Officer, who explains that plaintiff's supervisor, Chris Cutlip, received a salary and was "not paid according to the number of hours he works in a given workweek" and he was "not required to record or otherwise report to [defendant] the specific number of hours he works in any given period," and that defendant's contract with USCP was "a fixed-fee contract," meaning defendant "was/is paid a specified amount per month for its services, regardless of the hours worked by Mr. Cutlip (or any other GGT employee) in a given period." Def.'s Mem., Ex. B, Decl. of Brian Cooper ¶¶ 19-20, ECF No. 9-2.

reasonableness of their belief that disclosed information falls within those protected categories to satisfy the second element of their NDAA retaliation claims, *see id.* at *5 n.8.

For example, the Eleventh Circuit affirmed the dismissal of an NDAA retaliation claim because the plaintiff's disclosure of a plan by her employer, a federal contractor, to engage in risky negotiation tactics that could jeopardize a federal grant did not amount to evidence an objectively reasonable person would consider an "abuse of authority," "violation of law, rule, or regulation," "gross mismanagement, or, really, anything more than a dispute with her boss." *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 874-76 (11th Cir. 2022). The court recognized that Section 4712 does not require a plaintiff to prove "that an actual violation occurred" and instead "requires only a disclosure that a covered person 'reasonably believes' indicates" a violation, and nonetheless proceeded to hold that the plaintiff's "belief was not objectively reasonable as a matter of law." *Id.* at 871-72. While much of the problem with that plaintiff's claim was that she was attempting "to blow the whistle *before* the foul," *id.* at 875 (emphasis in original), this circuit decision makes clear that NDAA retaliation claims may be dismissed for failing plausibly to allege an objectively reasonable belief that the disclosed information was of the kind protected by Section 4712(a)(1).

A similar principle was applied in *Sargent v. Pompeo*, where the plaintiff alleged that her employer, a government contracting firm, retaliated against her for disclosing "alleged collusion between a State Department employee and [the contractor's] employees to sexually harass female . . . employees," which collusion she contended constituted "an abuse of authority relating to a Federal contract" or "a violation of law, rule[,] or regulation related to a Federal contract" under Section 4712(a)(1). 2020 WL 5505361, at *14-15 (quoting 41 U.S.C. § 4712(a)(1)). The plaintiff failed to state a claim because the text of "both of those [categories

of protected information under Section 4712(a)(1)] specifically require that the abuse or violation be 'related to a Federal contract,'" *id.* at *15 (quoting 41 U.S.C. § 4712(a)(1)), but such a "nexus with the contract" was lacking in the plaintiff's allegations of conspiracy and "expand[ing] the reach of § 4712 to encompass any misconduct or illegal discrimination occurring within the context of a federal contract would stretch the statute's text beyond its plain meaning," *id.*

Likewise, in *Arawole*, another Judge on this Court held that a plaintiff failed to state a claim where he alleged retaliation for disclosing his co-worker's supposed violation of "internal personnel policies," 2025 WL 947477, at *15, which violation the plaintiff contended constituted "a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract" under Section 4712(a)(1), *id.* at *12 (quoting 41 U.S.C. § 4712(a)(1)). Since the plaintiff's complaint "merely allege[d]" a few facts that did not support a reasonable belief that the co-worker's conduct constituted a substantial safety risk, *id.* at *13-14, and the internal policies that the co-worker allegedly violated were not "the kind of law, rule, or regulation required to support a claim" under Section 4712(a)(1), *id.* at *15, the plaintiff could not survive the defendant's motion to dismiss. By contrast, in *Moses v. Neighborhood Reinvestment Corp.*, a motion to dismiss an NDAA retaliation claim was denied where the complaint identified the specific terms of a statute that the defendant allegedly violated, *see* No. 23-cv-2246 (LLA), 2024 WL 4103699, at *5 (D.D.C. Sept. 3, 2024) (citing 42 U.S.C. § 8104(e)), described the defendant's alleged misuse of government funds "to pay for two contracts that 'had nothing to do with'" the intended purpose of the federal grant awarded to the defendant, *id.* (citation omitted), and stated that the plaintiff's disclosures included charges that the defendant "had violated both its own policies and [that statute]," *id.* at *1.

Here, plaintiff identifies the protected information in his disclosures as "Cutlip's fraudulent activities and violation of [d]efendant's [c]ontract - namely falsifying his work hours, and thereby obtaining payment from the federal government fraudulently." Compl. ¶ 44. Throughout his complaint, plaintiff describes the purportedly protected information in similar terms. *See id.* ¶¶ 17, 36 (discussing disclosure of "issues at work and Cutlip's absences"); *id.* ¶¶ 18, 37 (discussing disclosure of "Cutlip's absences, and Cutlip's false reports as to his work hours" and "Cutlip's illegal and fraudulent activities"); *id.* ¶¶ 21, 40 (discussing disclosure of "Cutlip's absences and falsification of work hours"); *id.* ¶¶ 22, 41 (discussing disclosure of "Cutlip's fraudulent actions," *i.e.*, "not showing up for work, and falsifying his time cards"); *id.* ¶¶ 23, 42 (discussing disclosure of "Cutlip's false time reports and unfounded billable hours").

Conspicuously absent from the complaint are allegations providing the required "nexus" between Cutlip's alleged misconduct and the terms of the federal contract that defendant was tasked with performing. *Sargent*, 2020 WL 5505361, at *14. The only detail plaintiff provides about the terms of that contract is that it "required [d]efendant to provide physical security onsite for repairs and maintenance on vehicular barriers around the [USCP] campus," Compl. ¶¶ 9, 28, but plaintiff includes "no allegation[s] that [defendant] failed to provide security, overcharged the government, or procured the contract through underhanded means," *Sargent*, 2020 WL 5505361, at *14. Plaintiff does not allege that Cutlip's allegedly fraudulent activity—*i.e.*, "having a night shift employee badge in and out" while Cutlip was absent for his assigned shifts and informing the USCP contract supervisor that "the USCP badging system was broken and there was no need to follow it"—caused any failures in the provision of physical security on USCP's campus or any improper billing of the federal government. Compl. ¶¶ 13, 32.[6] Thus,

---

[6] To be sure, plaintiff may not be privy to the specific terms of defendant's contract or to defendant's billing practices with regard to that contract. If such "necessary information lies within defendant[']s] control," discovery

the alleged misconduct instead appears to be "attenuated from the contract itself." *Sargent*, 2020 WL 5505361, at *14. Indeed, plaintiff's allegations are analogous to the alleged violations of "internal personnel policies" deemed insufficient to support the plaintiff's reasonable belief that he disclosed protected information in *Arawole*, *see* 2025 WL 947477, at *15, and they are a far cry from the detailed disclosures of alleged statutory violations and misuse of federal grant funds that stated a plausible claim in *Moses*, *see* 2024 WL 4103699, at *5.

Without allegations of how Cutlip's alleged manipulation of defendant's timekeeping system violated the terms of defendant's contract with the federal government or resulted in fraudulent charges to the federal government, plaintiff has not plausibly established that his belief that his disclosures were protected under Section 4712(a)(1) was "objectively reasonable as a matter of law," *Fuerst*, 38 F.4th at 872, and, consequently, no reasonable inference can be drawn that defendant is liable under this statute for reprisal against plaintiff, *see Arawole*, 2025 WL 947477, at *14; *Langeman*, 88 F.4th at 294 (observing that courts "need not accept inferences . . . not supported by the facts set out in the complaint" (quoting *Hettinga*, 677 F.4th at 476)). The allegations here more closely resemble a labor dispute from a disgruntled employee than a whistleblower claim from an individual seeking to avoid gross abuse of government resources. Rather than "expand[ing] the reach of § 4712 to encompass any misconduct . . . occurring within the context of a federal contract," *Sargent*, 2020 WL 5505361, at *15, defendant's motion to dismiss plaintiff's NDAA retaliation claim must be granted.

may be necessary to confirm factual allegations, but plaintiff must still include "pleadings on information and belief" "accompanied by a statement of the facts upon which the allegations are based" to meet his burden at the motion to dismiss stage. *Kareem*, 986 F.3d at 866 (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)). Plaintiff does not even attempt to plead the necessary facts on information and belief and thus fails to meet his burden.

### 2. *Retaliation Under the False Claims Act*

Plaintiff's False Claim Act retaliation claim falters "[f]or many of the same reasons [p]laintiff's [NDAA] claim[] fail[s]." Def.'s Mem. at 22. The FCA "authorizes suit by an employee who 'is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop . . . violations of this subchapter.'" *United States ex rel. Kini v. Tata Consultancy Servs., Ltd.*, 146 F.4th 1184, 1189 (D.C. Cir. 2025) (quoting 31 U.S.C. § 3730(h)). Thus, to state a retaliation claim under this statute, "an employee must allege (1) engagement in a protected activity, and (2) discrimination because of that activity." *Id.*

To establish engagement in a protected activity, the plaintiff can show either "(1) 'steps taken antecedent to a False Claims Act proceeding' [or] (2) 'lawful acts done in furtherance of other efforts to stop 1 or more violations of [the FCA].'" *Id.* (internal quotation marks omitted) (quoting *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019)). An employee takes antecedent steps "in furtherance of an [FCA] action," 31 U.S.C. § 3730(h), by "'investigat[ing] matters that reasonably could lead to,' or have a 'distinct possibility' of leading to, a 'viable False Claims Act case.'" *Singletary*, 939 F.3d at 295 (quoting *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 66, 68-69 (D.C. Cir. 2008)). The employee need not "'know' that the investigation he was pursuing could lead to a False Claims Act suit," *Hoyte*, 518 F.3d at 67 (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741 (D.C. Cir. 1998)), but "[d]issatisfaction with one's treatment on the job is not enough" nor is "an employee's 'investigation of nothing more than his employer's non-compliance with federal or state regulations,'" *Singletary*, 939 F.3d at 295 (quoting *Hoyte*, 518 F.3d at 66). Under the second

prong of Section 3730(h), an employee's "preventative" steps to stop "violations of the statute before they happen or recur" need not be "tied to the prospect of a False Claims Act proceeding," but the employee must "ha[ve] an objectively reasonable belief that the employer is violating, or will violate, the False Claims Act." *Id.* at 296.

Since the first element of an FCA retaliation claim—engagement in a protected activity—requires proof of the plaintiff's investigation or prevention of conduct that could reasonably constitute a substantive FCA violation, courts at the motion to dismiss stage require plaintiffs to connect the defendant's alleged misconduct to false claims for payment submitted to the federal government. *See Singletary*, 939 F.3d at 296 (explaining that both prongs of Section 3730(h)(1) "require[] that the employee's efforts pertain to fraud in connection with the submission of a claim for federal government funds"); *United States ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 77 (D.D.C. 2008) ("To be afforded whistleblower protection under the FCA, the plaintiff's investigation must concern false or fraudulent claims." (citation and quotation marks omitted)). For example, in *Singletary*, the D.C. Circuit held that allegations of the plaintiff's "kn[owledge] that federal law mandated" certain research conditions for receipt of federal grant funding, which the defendant was not honoring, combined with allegations that the defendant was required to make annual compliance certifications to the federal government, adequately "support[ed] [the plaintiff's] objectively reasonable belief that, during the relevant time period, the [defendant] was or would be making false compliance certifications in connection with the submission of requests for federal funding." 939 F.3d at 297-98; *see also Moses*, 2024 WL 4103699, at *6 (determining that plaintiff sufficiently pleaded protected activity where the plaintiff alleged knowledge that the defendant had submitted certifications of compliance to the

federal government during a period when the plaintiff knew the defendant was not in compliance with federal regulations).

On the other hand, plaintiffs' allegations have been found insufficient to establish the protected activity element of an FCA claim where they described employees investigating misconduct—*i.e.*, off-label marketing of drugs as a treatment for obesity—that the employees surmised "*post facto*" to have resulted in false reimbursement claims to federal healthcare programs since such allegations failed to allege that the employees' disclosures of that misconduct to the defendant "related to fraudulent claims against the government" and those disclosures instead indicated "frustrat[ion]" about how that misconduct might impact the employees' own experiences in the workplace. *United States v. Novo Nordisk Inc.*, No. 21-cv-55 (RJL), 2026 WL 880085, at *7-8 (D.D.C. Mar. 31, 2026). While the complaint demonstrated that the employees later connected the dots between the defendant's off-label marketing scheme and potential false reimbursement claims, no allegation was made "that the [reimbursement] calculations were part of the investigations that allegedly led to [the employees'] demotion and termination" and thus the complaint provided no basis for the court to infer that the disclosures constituted protected activity under the FCA. *Id.* at *8; *see also United States ex rel. Lott v. Not-For-Profit Hosp. Corp.*, 296 F. Supp. 3d 143, 152 (D.D.C. 2017) (dismissing an FCA retaliation claim for insufficiently alleging protected activity where the plaintiff "cite[d] an email that he sent to the [defendant]" that "d[id] not identify any particular violation of the FCA that [the plaintiff] sought to prevent").

Here, plaintiff asserts that his internal disclosures of Cutlip's "manipulat[ion]" of defendant's "newly modified timekeeping system" and failure to "report[] his absences" while other employees covered his shifts constitutes protected activity under the FCA. Compl.

¶¶ 13-14; *see* Pl.'s Opp'n at 12. Plaintiff does not specify, however, whether his disclosures were part of an effort to investigate an existing FCA violation or to prevent a future FCA violation, but under either standard, these factual allegations fail to state a plausible claim because the complaint is devoid of allegations regarding whether, and, if so, how, Cutlip's alleged timecard manipulation "pertain[s] to fraud in connection with the submission of a claim for federal government funds," *Singletary*, 939 F.3d at 296, rather than simply dishonest service to defendant. Plaintiff does not allege, even on information and belief, that defendant submitted duplicative claims for payment of the wages of both Cutlip and the employee covering for Cutlip during the hours that Cutlip allegedly skipped his shifts. *See generally* Compl. Although plaintiff makes a passing conclusory reference in his complaint to defendant "obtaining payment from the federal government fraudulently," Compl. ¶ 44, and argues in briefing that Cutlip submitted "false time reports to obtain federal contract payments," Pl.'s Mem. at 12, plaintiff includes no facts about defendant's billing practices with regard to the federal contract to support those remarks, *cf. Singletary*, 939 F.3d at 297-98 (alleging knowledge by the plaintiff that the defendant was required to submit compliance certifications to the federal government that would be fraudulent in light of the disclosed misconduct); *see also Moses*, 2024 WL 4103699, at *6 (same).

Nor does plaintiff adequately allege that his disclosures to defendant's HR department related to fraudulent claims against the government. *See* Compl. ¶¶ 17-18, 21-23, 36-37, 40-42 (detailing plaintiff's disclosures of Cutlip's alleged absences from work and falsification of timecards without suggesting that Cutlip's alleged misconduct related to false claims against the government). Instead, plaintiff's disclosures suggest contemporaneous frustration with his employment conditions and a desire for defendant to respond to Cutlip's noncompliance with the

internal timecard policy, followed by *post facto* speculation that Cutlip's noncompliance could have generated false claims. *See Singletary*, 939 F.3d at 295 ("Dissatisfaction with one's treatment on the job is not enough . . . [n]or is an employee's 'investigation of nothing more than his employer's non-compliance with federal or state regulations.'" (quoting *Hoyte*, 518 F.3d at 66)); *Novo Nordisk Inc.*, 2026 WL 880085, at *8 ("[T]he relevant inquiry is not whether the [alleged misconduct] generated false claims, but rather whether [plaintiff's] conduct, including reports, complaints, objections, investigations, or the like, concerned the submission of false claims." (internal citation and quotation marks omitted)). Without allegations of disclosures that "pertain to fraud in connection with the submission of a claim for federal government funds," plaintiff fails to establish protected activity and thus fails to state a plausible FCA retaliation claim. *Singletary*, 939 F.3d at 296.

* * *

For the foregoing reasons, plaintiff's retaliation claims must be dismissed for failure to plead sufficient facts supporting an objectively reasonable belief that he made protected disclosures under Section 4712 of the NDAA or that he was engaged in protected activity under Section 3730(h) of the FCA.[7]

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint, pursuant to Federal Civil Rule of Procedure 12(b)(6), is granted. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: September 25, 2026

**BERYL A. HOWELL**
United States District Judge

---

[7] Since plaintiff failed to state a plausible claim to relief as to the first element of each retaliation claim, determining whether defendant took adverse actions against plaintiff because of his disclosures is an issue that need not be addressed.